(Surrogate's Court, New York County.    September 19, 1913.)

1. DESCENT AND DISTRIBUTION (§ 71*)—HEIRSHIP—BURDEN OF PROOF.
    The burden was upon parties claiming a share in the distribution of an intestate's estate to prove the relationship between intestate and the ancestor through whom they claimed.

    [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 229–236; Dec. Dig. § 71.*]

2. EVIDENCE (§§ 291, 297*)—DECLARATIONS—PEDIGREE.
    Declarations of a deceased member of the family, and the treatment of a person by members of a family, though a form of hearsay, are admissible in evidence in cases involving pedigree.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1150, 1154; Dec. Dig. §§ 291, 297.*]

3. DESCENT AND DISTRIBUTION (§ 71*)—HEIRSHIP—SUFFICIENCY OF EVIDENCE.
    Evidence introduced by the claimants to a share of an intestate's estate *held* to show that claimants' ancestor was a half-brother of the intestate.

    [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 229–236; Dec. Dig. § 71.*]

4. EVIDENCE (§ 349*)—COPY OF CENSUS RETURN—SUFFICIENCY OF CERTIFICATION.
    A copy of a census return for Ireland was sufficiently certified to under the requirements of Code Civ. Proc. § 956, where it was certified to by the assistant keeper of the public records, and bore the seal of the record office of Ireland, and also a certificate of the consul of the United States at Dublin, Ireland, that he had compared the copy with the original and that it was true and authentic.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1384–1387; Dec. Dig. § 349.*]

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. NAMES (§ 18*)—IDENTITY—EVIDENCE.
>   Identity of names is prima facie evidence of identity of parties.
>   [Ed. Note.—For other cases, see Names, Cent. Dig. §§ 4, 17; Dec. Dig. § 18.*]

6. BASTARDS (§ 3*)—LEGITIMACY—PRESUMPTION.
>   Legitimacy is always presumed in law.
>   [Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

7. DESCENT AND DISTRIBUTION (§ 71*)—EVIDENCE—CENSUS RETURN—EFFECT.
>   An official census return, introduced in a proceeding to establish heirship, is prima facie evidence of the family relationships shown by its context.
>   [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 229–236; Dec. Dig. § 71.*]

Judicial settlement of the account of Patrick J. Kennedy as administrator, etc. Decreed according to opinion.

Kindleberger & Robinson, of New York City, for claimants.
John W. Russell, of New York City, for administrator.

FOWLER, S. The only question for consideration in this proceeding is as to the persons entitled to distribution of the personal property of John F. Kennedy, deceased. It is asserted on the one hand that William Kennedy was a brother of the half blood to the intestate, and the issue of William Kennedy are here claiming to be entitled to share in the distribution of intestate's estate. It is on the other hand denied by the sister of John F. Kennedy and other relations of the whole blood of John F. Kennedy, the intestate, that William Kennedy was a half-brother of intestate, or that his issue should share in the distribution.

[1] The issue of fact is plain enough; it is the proofs which are confusing and confused. In Matter of McGerry, 75 Misc. Rep. 98, 134 N. Y. Supp. 957, the surrogate had occasion to refer to some of the difficulties incident to an issue of this character. In any event the burden of establishing that William Kennedy was the half-brother of John F. Kennedy is on the claimants.

When this matter was here before I held that the claimants had not sustained the burden resting on them. Subsequently the matter was reopened by me on allegations by claimants of further proofs. Since then additional testimony has been taken in behalf of all the parties to the proceeding and the issue is now ripe for adjudication.

[2] Whenever pedigree is directly involved in a proceeding of this kind, "hearsay" is permissible to establish relationship, if it is the declaration of a deceased member of the family or the husband or wife of a member of the family. So the treatment of the claimant by members of a family is some evidence in cases involving pedigree. Hubback on Succession, 429.

[3] The intestate, John F. Kennedy, was born in Ireland, the son of James Kennedy and Ellen Dunn, his wife, of Nenagh, county of Tipperary. The paternity of the issue of this marriage is not disputed by claimants. It is alleged by claimants that James Kennedy, the

father of John F., the intestate, was twice married, first to Mary Page, and that their progenitor, William Kennedy, was the son of the first marriage. This allegation is controverted by counterclaimants, and thus raises the only issue now for determination.

The issue is: Was William Kennedy, the son of James Kennedy, the father of the counterclaimants? Patrick J. Kennedy, the alleged half-brother of William Kennedy, swore on the stand that William was not a half-brother, and not the son of James Kennedy by his first marriage. So Mrs. Holmes, the daughter of James and the alleged half-sister of William, denied on oath that William was her half-brother, and this witness swore that Mary Page was not her father's first wife. This only makes the issue more apparent. Such mere denials of pedigree are not in themselves evidence, except of reputation.

But these are examples of the frequent contradictions apparent in the evidence before me. Yet I cannot think there is deliberate perjury in this case. Both the intestate and William Kennedy were from Nenagh, county Tipperary, where the name Kennedy was not uncommon. In a long-settled neighborhood like Nenagh the ramifications of families are likely to be involved and intricate, and persons of the same surname are generally kindred of some kind. I must acquit, I think, in this matter, the discrepant witnesses of any deliberate intention to impose on justice. I am unable to agree with counsel for counterclaimants that there is deliberate perjury apparent in the record. But the contradictory testimony of witnesses is none the less embarrassing to me in reaching a conclusion.

[4] On the rehearing the claimants offered in evidence a certified copy of the census returns for Ireland in 1851, purporting to show as the head of a family in the parish of Nenagh, county Tipperary, one James Kennedy, then living with Ellen, his second wife. His prior marriage in 1822 is there stated, and among the family sleeping in his house are the children, William, James, John, and Bridget.

[5] Identity of names is sufficient prima facie evidence of identity of the parties, and no proof to the contrary has been offered before me. The names precisely correspond to the names of the admitted children of James, the father of intestate. The son William mentioned in the return was then 15 years of age. He could not have been the son of the second marriage, which is stated as occurring only in 1847. This William must have been the issue of the prior marriage of James, which corresponds to claimant's allegations. This census return, if competent evidence, is of importance as showing at least that their James did have a son William, which is denied by the counterclaimants.

[6] Legitimacy is always presumed in law. But is the certified copy of the Irish census return for 1851 entitled to be received in evidence? It is certified as a copy by the assistant keeper of the public records and bears the seal of the record office of Ireland, and also the certificate of the consul of the United States at Dublin, Ireland, that he has compared the copy with the original and that the same is true and authentic. I am inclined to think that the proof of the copy conforms to section 956 of the Code of Civil Procedure, and that if the

original would be evidential such copy is evidence to the extent of the original public records.

[7] Now as to the original. Books and documents of a public nature containing facts preserved for public reference and inspection are prima facie evidence of their contents, as they are made by disinterested persons in the discharge of a public duty. The person making the entries has no reason to falsify such entries. It seems to me that the original is prima facie evidence to show that James had in the year 1851 a son of a prior marriage then living in his house with his second wife and her children, some of whom are these counterclaimants.

In due course these children of James, or some of them, migrated to New York, and are now before me. Whether the son William, the ancestor of claimants, also migrated, is the next question. That William, the ancestor of claimants, did migrate, is conceded. Whether he was the half-brother of counterclaimants is the great question. Claimants attempt to establish this link in their chain of evidence by the treatment of their William by the intestate John F. Kennedy and those conceded to be of his family. That there was the closest social intercourse between claimants and counterclaimants there is no doubt or dispute. Upon many matters of detail the testimony is most conflicting. It would subserve no good purpose for me to review it all in detail. Giving all the evidence due weight, I am inclined to think that the claimants representing William have now made out their allegation and are entitled to share in the distribution of intestate's estate.

In weighing the evidence I am greatly influenced in this conclusion by the admission of Patrick J. Kennedy, the brother of the whole blood and former administrator of intestate. He admits that claimants, the children of William, "called him uncle," and "that he never called them down for it." Now this was long before the lis mota. These and similar occurrences and circumstances given in evidence induce me to conclude that claimants have now sustained their allegations of kinship and are entitled to succeed and share in the distribution.

Enter decree accordingly.