John D. Bennett, J.
In this probate proceeding the contestant’s status as a distributee having been put in issue by proponent, a preliminary hearing was held to determine whether the contestant is decedent’s son.
Decedent died on July 27, 1974. On August 4, 1974 contestant, claiming to be decedent’s only child, requested letters of administration on her estate alleging that decedent was survived by one son and "a purported husband,” the proponent. On August 14, 1974 proponent sought probate of a writing dated July 24, 1974 in which he was named the executor and sole beneficiary. His petition alleged that the decedent was survived by a husband, proponent, and one son, who filed objections to the propounded writing alleging fraud and undue influence practiced upon the decedent by proponent, lack of testamentary capacity, due execution and mistake. By order dated August 5, 1975 proponent was authorized to amend his petition by deleting therefrom contestant’s name as a distributee, who, proponent alleges, was neither decedent’s natural nor adopted child.
Prior to the taking of any testimony, proponent moved over contestant’s objection to amend his bill of particulars to strike therefrom any references to decedent being formerly known as Estelle Du. Contestant argues that whether decedent was ever known as Estelle Du. is an issue to be determined by the court.
The purpose of a bill of particulars is to clarify and limit the issues (Matter of Goldin, 90 NYS2d 601, 603), where Surrogate Buscaglia said: "The theory underlying a bill of particulars is to clarify the issues so as to apprize [sic] proponents of what proof they will have to meet, and the object of the bill is to get the facts as they are claimed to exist, not as they may actually exist. In re Carhart’s Will, 168 Misc. 280, 6 N.Y.S.2d 596.” Because of proponent’s extensive pretrial discovery proceedings he has or should have been aware long prior to the hearing that the court would be required to determine whether or not the decedent was ever known by the name of Estelle Du. To permit the amendment of the bill of particulars on the eve of trial is manifestly unfair to contestant (Matter of Danzig, NYLJ, March 30, 1976, p 10, col 2). The motion to amend the bill of particulars is denied. *454 Proponent also moved to exclude all witnesses including the contestant claiming that until contestant’s status as a distributee is determined he is not a party to the probate proceeding. This being a preliminary hearing to determine the contestant’s status, he is a party to such preliminary hearing and as such he has the right to be present at this hearing (NY Const, art I, § 6; Ajaeb v Ajaeb, 276 App Div 1094; Richardson, Evidence [10th ed], §§ 451, 461). Proponent’s motion to exclude contestant as a witness is likewise denied.
To support his claim that he is the sole child of decedent’s marriage to George M., contestant submitted the testimony of a younger brother and a younger sister of decedent and himself. Decedent’s brother testified that decedent was born in Brooklyn, New York, on April 22, 1904 and at the time of her death was approximately 70 years of age. Prior to her marriage to George M. in 1928 or 1929, decedent’s maiden name was Esther Do. but she was sometimes known as Estelle Do. and people frequently misspelled the family surname as Du. George M. was a real estate broker with an office on Bushwick Avenue in Brooklyn, New York, prior and subsequent to 1947. In addition he was a salesman of novelties which required him to travel outside New York, frequently accompanied by decedent in his travels. The couple lived on East 48th Street in Brooklyn, New York, in 1946 and 1947. Decedent conducted an income tax preparation business from her husband’s real estate office for some years prior to and during the year 1946 and 1947.
The witness further testified that decedent had three miscarriages prior to the birth of contestant on March 5, 1947. Although he resided a short distance from Bushwick Avenue and saw the decedent from time to time during 1946 and the early part of 1947, the witness did not notice that she was pregnant. He learned of the contestant’s birth from decedent’s husband who telephoned him from Atlantic City, New Jersey, where the contestant was born. Over objection the witness was permitted to testify that the decedent told him that contestant was her son.
Decedent’s younger sister, an attorney, testified that during 1946 and 1947 her law office was some two blocks from that of George M., and she resided a short distance from the decedent’s home in Brooklyn, and that she had frequent contact with her. She knew in 1946 of the pregnancy of the decedent who was under the prenatal care of a Dr. Boley whose office *455 was near her sister’s home. The witness stated that she was aware of at least one miscarriage by her sister prior to the birth of contestant. Some time in December, 1946, she stated, decedent and her husband closed their office and went to Florida. She, too, learned of contestant’s birth from George M. Her testimony substantially corroborated that of her brother: that contestant was decedent’s only child, whose middle name was the same as her father’s. Both witnesses denied knowing George M.’s birthplace.
Contestant testified, without objection by proponent under CPLR 4519, that he was the decedent’s child by George M. Both treated him as their child, holding him out to their respective families and friends as such. As additional proof of his birth, contestant put in evidence a certified copy of his birth certificate from the office of the Registrar of Vital Statistics, Atlantic City, Atlantic County, New Jersey. The certificate stated that contestant was born on March 5, 1947, "father, George M; mother; Estelle Du.” Proponent put in evidence a certified copy of the New Jersey Department of Health — Bureau of Vital Statistics application for birth certificate, which carried the following legend: "This is merely a copy of the information supplied for preparation of the original birth certificate.” The application indicated that the address of the mother, Estelle Du., was 1805 Atlantic, Atlantic City, New Jersey; age at time of birth 19, birthplace Philadelphia, Pa.; father, George M., age at time of birth 25, birthplace Philadelphia, Pa., occupation machinist; the place of birth, Atlantic City Hospital, Atlantic City.
Proponent conceded that contestant was held out, treated and raised by decedent and her husband as their child. He contends, however, that contestant was- neither their natural nor adopted child. Proponent argues that the testimony of all three of contestant’s witnesses as to pedigree is hearsay and should be disregarded. Of necessity, proof of pedigree must be based upon hearsay. The issue of lineage rarely comes into question when all of the parties who could testify are available to testify. Richardson on Evidence (10th ed, ch XVI) discusses pedigree testimony as an exception to the hearsay rule. In section 321 the author sets forth the necessary foundation for the admission of pedigree declarations as follows: "1. The declarant is dead; 2. The declarant was related by blood or affinity to the family concerning which he speaks; 3. The declarations were made ante litem motam.”
*456 Decedent’s declarations to her brother and sister that contestant was her son clearly come within the rules for pedigree declaration. With regard to contestant’s testimony as to his pedigree, it, too, is admissible (see Richardson, supra, § 329), subject to CPLR 4519 if there is objection. The fact that pedigree declarations are admissible in evidence does not mean that the trier of the facts must accept them as true. He may give such declarations the weight they warrant, taking into account that the declarant may have some reason for alleging or denying a particular relationship (Eisenlord v Clum, 126 NY 552, 564; Matter of Strong, 168 Misc 716, affd 256 App Div 971).
To controvert contestant’s claim, proponent submitted a part of the decedent’s certified hospital record dated May 29, 1970 of the North Shore Hospital containing her history which indicated "one miscarriage, no live children.” There was admitted in evidence decedent’s blood transfusion record from the certified copy of the hospital record of her hospitalization in 1954 in Memorial Hospital showing that her blood type was 0-RH+. A certified copy of the hospital records of the Atlantic City Medical Center of Estelle Du., dated March 5, 1947, was put in evidence, which indicated that the patient’s blood type was AB-RH+, and that prior to her admission on March 5, 1947 the patient was examined at the hospital dispensary on February 24, 1947. A part of the record there is the patient’s- thumbprint and the footprints of the infant. There was also admitted in evidence a certified copy of the death certificate of decedent’s husband indicating that he died in the Veterans’ Administration Hospital in Brooklyn, New York, on March 19, 1962, "married, occupation real estate broker, birthplace Wisconsin, veteran of World War I, informant Esther M., wife.” Contestant admitted on recross-examination that his blood type was A+.
A friend of decedent, Esther P., testified on behalf of the proponent that she first met the decedent in 1937 when decedent prepared the witness’ income tax returns. The witness stated she lived around the corner from George M.’s real estate office, saw the decedent frequently who prepared her income tax returns for many years after 1937. The witness attended contestant’s wedding and gave him a present. The decedent prepared the witness’ 1946 income tax returns in February or March of 1947, at which time the witness did not notice any signs that decedent was pregnant. The witness *457 stated that in 1943 decedent told her that although the decedent had been pregnant five times, she could not carry a child and was attempting to adopt one. Contrary to the testimony of decedent’s sister, the witness stated that George M.’s office was open during January and February of 1947. The witness said she saw the decedent during those months from time to time but did not observe any signs of pregnancy in the decedent. The decedent often visited the witness at her home. When contestant was about 15 years of age the decedent told the witness that contestant was mistreating the decedent because he had learned that he was not her natural son but was adopted.
Proponent contends that decedent’s, contestant’s and Estelle D.’s blood types, of which the court must take judicial notice, exclude contestant as decedent’s child, citing Matter of Swahn (158 Misc 17). That case, like the case at bar, involved a will contest. Contestant there, contending that the proponent fraudulently induced the testator to believe that she was the decedent’s daughter and her children his grandchildren, sought an order pursuant to the provisions of section 306-a of the Civil Practice Act, now CPLR 3121, directing the proponent, her two children and husband to submit to a blood-grouping test.
Surrogate Wingate held that the blood relationship to decedent of the proponent and her children, who were parties to the proceeding, was an issue, and that the Surrogate could direct that they submit to a blood-grouping test. As to proponent’s husband, since he was not a party the Surrogate refused to order him to submit to a blood-grouping test as a witness. In the course of his decision, the learned Surrogate discussed at great length the scientific basis and use of blood-grouping tests in disputed parentage which are only admissible to exclude. Interestingly enough, the Surrogate at page 25 of his decision recognized the difficulty arising from the failure of the blood-grouping test to include proponent’s husband, the father of the children. The court referred to a second blood test for the agglutinogens M and N as well as blood grouping. (For a detailed analysis of blood tests as the basis for exclusion in paternity proceedings see 1 Schatkin Disputed Paternity Proceedings [4th ed], ch 5 et seq.)
It is quite apparent that the blood types in evidence are not the result of the type of tests as the blood-grouping tests referred to by both Surrogate Wingate and Sidney B. Schat *458 kin, Esq. which require that they be performed by well-qualified physicians and with great care. Fortunately, the court is not required to make a determination based on blood typing for hospitalization purposes as distinguished from the meticulous tests required in disputed parentage cases. Sufficient facts have been adduced to enable the court to make a determination, particularly the additional facts recited in the certified copies of the birth and death certificates other than the fact of birth and death as well as the history and treatment facts recited in the hospital records in evidence.
In Matter of Gibson (29 Misc 2d 21) this court held that a death certificate is proof of death and not of any additional facts recited therein. Subdivision 2 of section 4103 of the Public Health Law provides that a certified copy of a birth or death certificate or a copy of a registration of birth is prima facie evidence of the facts stated in all courts and actions or proceedings and shall be accepted with the same force and effect as the original certificate. The courts have held that the provisions of the Public Health Law are inapplicable to the controversies between private persons. Richardson, supra, in section 345, criticizes the refusal of the courts to accept the documents to establish any of the collateral facts stated. In the case of foreign birth and death records properly authenticated, the courts have held that they are admissible in evidence as to the collateral facts stated therein. The author prophetically stated: "There seems no sound reason why a distinction should be drawn between the admissibility of foreign records of birth and similar domestic records. The full extent to which the business records exception to the hearsay rule (CPLR, Rule 4518) applies to birth certificates has not yet been determined. It seems clear, however, that under this exception the birth certificate is admissible as evidence of the birth and age of the person.”
In Matter of Kirkby (57 Misc 2d 982, 987) Surrogate Di Falco met head-on the issue raised by Richardson, supra, and specifically overruled the holding that Public Health Law 4103 applied only to public controversies, stating: "It is true that those and other cases may be said to stand for the proposition that the statute, which does state that such documents are prima facie evidence of all of the facts with which they are concerned, applies only to public rights and not to private controversies and so does not remove the hearsay impediment *459 that prevents reliance upon the evidence of the collateral matters such as pedigree with which they deal. In none of the cases cited, however, was the effect of the business entry and ancient document rules upon the hearsay exclusion considered but it is the considered opinion of this court, in the light of other authorities, that where the conflict exists the former must prevail, solely with respect to the question of admissibility or nonadmissibility without regard to the weight to be given to the evidence of the matters sought to be proven.” CPLR 4540 provides that the vital statistics of sister States are entitled to be introduced in evidence as would be the vital statistics of our own State under section 4103 of the Public Health Law. This court is of the opinion that if the birth certificate and application as well as the death certificate had been offered in evidence under the business records rule (CPLR 4518) they would have been admissible in evidence as such together with the collateral facts stated and not solely for the proof of birth or death. The blood typings of the patient shown on the records of Memorial Hospital, North Shore Hospital, and the Atlantic City Medical Center are clearly admissible under CPLR 4518. There can be no doubt that the blood type was either necessary for or part of the treatment accorded to the patient. As to the decedent’s history set forth in the Memorial Hospital record, it, too, is admissible since such history was necessary for decedent’s treatment (Williams v Alexander, 309 NY 283, 287).
Considering all of the evidence adduced by both proponent and contestant, it is apparent that the decedent was not the same person as the mother of the contestant born on March 5, 1947 in the Atlantic City Medical Center. Contestant’s mother’s age was 19, born in Philadelphia, and his father, age 25, was born in Phildelphia, was a mechanic, and both were residents of Atlantic City at the time of contestant’s birth. In 1947 the decedent was 43 years of age, born in Brooklyn. Her husband, George M., was then 48 years of age, born in Wisconsin, occupation real estate broker, and both were residents of Brooklyn, New York. Decedent’s blood type was O, which could never change, whereas the mother was type AB (Matter of Swahn, 158 Misc 17, supra). In many respects the instant case is similar to that of Matter of Strong (168 Misc 716, affd 256 App Div 971, supra). In making this determination the court is not impugning the legitimacy of the contestant but the court will not rely upon the presumption that the *460 contestant is the child of decedent and George M. in light of the proof adduced (Matter of Findlay, 253 NY 1).
The court is impressed with the testimony of Esther P., decedent’s friend, who, it should be noted, the contestant denied knowing.
With regard to the letters addressed to decedent and her husband from various persons whose identity was not established, admitted in evidence by proponent, proponent failed to establish that they were in the possession of decedent at the time of her death. Accordingly, they will be completely disregarded.
On all the evidence adduced the court finds that the contestant is not the son of the decedent and as such is not a distributee entitled to contest the propounded writing. In view of the fact that proponent has not submitted any evidence that he is the surviving spouse and sole distributee of the decedent, he is directed to do so within 10 days from the date of this decision (see subdivision [c] of section 1830.13 of the Uniform Rules for Surrogates’ Courts, Second Judicial Department, 22 NYCRR 1830.13 [c]). Upon his failure to do so a supplemental citation will issue directed to the brother and sister of the decedent and any issue of a predeceased brother or sister to show cause why the writing dated July 24, 1974 should not be admitted to probate.